# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

*vs.*

                                    **CRIMINAL ACTION NO. 2:09CR8**

**JOSHUA JONES,**

      **Defendant.**

## REPORT AND RECOMMENDATION/OPINION

On the 3rd day of August 2009, came the defendant, Joshua Jones, in person and through counsel, Roger D. Curry, and also came the United States by its Assistant United States Attorney, Stephen Warner, for a hearing on defendant's Amended Motion to Suppress [Docket Entry 55], which motion was filed on July 18, 2009. The United States filed its Objection to the Motion and Request to Deny the Motion without Hearing on July 20, 2009 [Docket Entry 56]. The undersigned declined the government's request to decline the motion without hearing.

The undersigned received the testimony of Government witness Upshur County Sheriff's Deputy Troy Brady; received exhibits in evidence; and heard arguments of counsel.

## Procedural History

Defendant was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on April 15, 2009. The indictment charges Defendant with Possession of Pseudoephedrine to be used in the Manufacture of Methamphetamine [Counts One and Three]; Possession of Equipment and Chemicals to Manufacture Methamphetamine [Count Two]; and Possession of LSD with Intent to Distribute [Count Four]. An arrest warrant was issued on April 15, 2009, by United States District Judge Robert E. Maxwell. Defendant was arrested on April 28, 2009, and appeared before the undersigned United States Magistrate Judge on April 29, 2009.

**Facts**

The undersigned finds the following testimony and evidence credible, and therefore recommends these findings of fact. On April 4, 2008, Upshur County Deputy Troy Brady had a vehicle stopped for a "dead" inspection sticker when Defendant drove by in a 1997 Pontiac. Deputy Brady noticed the license plate on the Pontiac was "dead" because it had a blue decal, indicating it was registered in 2007. He left the vehicle he had previously stopped and went over to the Pontiac that Defendant was driving. The vehicle had stopped near Rock Cave Towing. Deputy Brady asked Defendant for his driver's licence, insurance card, and registration card. The license plate did not come back to any vehicle. At some point Deputy Caynor arrived and told Deputy Brady that he had stopped the same vehicle just days earlier and had written a ticket for expired registration. Deputy Brady decided to have the vehicle "towed." He called Rock Cave Towing, which was just 100 to 150 yards away. Someone from the towing company arrived and drove the vehicle to their lot.

Deputy Brady began an inventory search of the vehicle. He testified it was department policy to perform an inventory search when a vehicle had been towed. Deputy Caynor started doing the inventory search. The officers found what appeared to be a crack pipe with white residue on it, an empty baggie, a WalMart receipt for lighter fluid and air hose, salt, a Mason jar containing a clear liquid, and a brown lock box in the vehicle. Deputy Brady did not notice the date of the receipt, but did notice it was for seven or eight cans of starter fluid.

Deputy Brady called Chief Deputy Michael Coffman and advised him of what the officers had seen in the vehicle. Deputy Brady testified that in his experience these items were used in the manufacture of methamphetamine, although he was not sure in what way they were used. Chief Deputy Coffman presented a signed affidavit to Upshur County Magistrate Helen Ekhard, which

2

provides:

> This officer recieved [sic] a call from Corporal Troy A. Brady advising that he stopped a 1997 Pontiac Grand Prix on Rt 20 S in Upshur County, WV. The vehicle was driven by Joshua Jones. Officers conducted an inventory search of said vehicle and discovered a crack pipe and an empty baggy in the vehicle. The driver also has a mason jar with a clear liquid in it, salt and a brown lock box. In said vehicle. The items are used in the manufacture of methamphetamine.

Magistrate Eckhard issued the search warrant for the vehicle, and the search was executed that same day. Among other items, the officers seized one baggie of marijuana, one baggie containing a white powder substance, two glass smoking tubes, digital scales, lithium batteries, night vision goggles, starter fluid, paper towels, a small propane cylinder, a stun gun, and plastic tubing.

### **Contentions of the Parties**

Defendant does not contend that the vehicle stop was unconstitutional or that the inventory search of the vehicle was inappropriate or objectionable. He contends that the inventory search was actually terminated and a search warrant obtained, and that the search warrant was not based on probable cause. He contends the search warrant is defective because the "glass smoking device" is not illegal, nor were the other objects found in the inventory search– a baggie, some air hose, a WalMart receipt, salt, a mason jar, and a brown lock box.

The United States contends that neither a warrant nor probable cause is required for an inventory search. South Dakota v. Opperman, 428 U.S. 364 (1976). The undersigned agrees, and, in fact, Defendant concedes this point. The United States also contends that the search warrant was facially valid, having been issued upon an affidavit which contains probable cause.

In a review of an issued search warrant, "great deference" is given to the issuing judicial officer's probable cause determination. United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). The test on review is whether there is substantial evidence in the record supporting the magistrate's

decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 728 (1984). To that end, the reviewing court does not conduct a *de novo* review but instead limits itself to the information presented to the magistrate who issued the warrant. Id. See also United States v. Wilhelm, 80 F. 3d. 116, 118 (4th Cir. 1996).

The determination of whether the State Magistrate had probable cause to issue the warrant to search the vehicle is made by answering the question: From a totality of the circumstances presented to the issuing judge, was there "a fair probability that contraband or evidence of a crime" would be found? Illinois v. Gates, 462 U.S. 213, 238 (1983).

In United States v. Leon, 468 U.S. 897, 926, 104 S. Ct. 3405, 3422, 82 L.Ed 2d 677 (1984), the United States Supreme Court held there is a "good faith" exception to the exclusionary rule. The undersigned will look first to the "good faith" exception and, if this exception is inapplicable, then to a determination of whether or not there was probable cause to support the warrant. This approach was approved by the United States Supreme Court in Leon,[1] and by the Fourth Circuit in United States v. Bynum, 293 F.3d 192 (4th Cir. 2002) ("Assuming without deciding that no probable cause supported the warrant, we will proceed 'immediately to a consideration of the officers' good faith.'")

---

[1] If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue. Indeed, it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue. Even if the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith only after finding a violation. In other circumstances, those courts could reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith. We have no reason to believe that our Fourth Amendment jurisprudence would suffer by allowing reviewing courts to exercise an informed discretion in making this choice. Leon at 925, 104 S. Ct. at 3421-3422.

(citing Leon); United States v. Legg, 18 F.3d 240 (4th Cir. 1994)("We turn first to consideration of the good faith exception.").

The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). In Leon, the Supreme Court explained the reason for rule. "First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate." 468 U.S. 897, 915, 104 S. Ct. 3405, 3417.

"If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Id. at 918, 104 S. Ct. 3405, 3419. The Supreme Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922, 104 S. Ct. 3405, 3420. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to the issue of suppression of evidence, depends on whether suppression of the evidence would have the desired effect of deterring police misconduct. In most cases, "when an officer acting with objective good faith has obtained a search warrant from

a judge or magistrate and acted within its scope . . . . there is no police illegality and thus nothing to deter." Id. at 920-21, 104 S. Ct. 3405, 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Lalor:

> Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

996 F.2d 1578 (4th Cir. 1993). Accord United States v. Bynum, 293 F.3d 192, 197-199 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence); and United States v. Cluchette, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search warrant issued by state judge over telephone, declining to determine whether warrant was valid under state law.) In other words, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search warrant would not be reasonable," and the good faith exception would therefore not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in it existence entirely unreasonable; and
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting Leon, 468 U.S. at 923.

The undersigned does not find any of the four situations which would make the good faith exception inapplicable exists in this case. There is no allegation that anything Chief Deputy

Coffman said in his affidavit was false or misleading. Further, Defendant does not argue, and the undersigned does not find any indication that the State Magistrate "wholly abandoned [her] detached and neutral judicial role." Further, the warrant particularized the place to be searched (the automobile).

Defendant's sole argument is that "the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in it's existence entirely unreasonable." Id. The undersigned does not agree. A review of the affidavit shows that as grounds for the search, Chief Deputy Coffman stated that the officers performing the inventory search found a crack pipe, an empty baggie, a mason jar containing clear liquid, salt, and a brown lock box. He also stated: "The items are used in the manufacture of methamphetamine." This is not a case of a "bare bones" affidavit, relying on anonymous informants.

> A "bare bones" affidavit is one in which an affiant merely recites the conclusions of others - - usually a confidential informant - - without corroboration or independent investigation of the facts alleged . . . . However, a 'bare bones' affidavit is not one with weak inferences, but rather one without facts from which a judge can determine probable cause.

United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996).

The undersigned finds the officers' reliance on the search warrant issued by the State magistrate was objectively reasonable. The good faith exception therefore renders the evidence seized in the search admissible, even if the search warrant were found to have lacked probable cause.

At the conclusion of the hearing, Defendant, through counsel, requested he be permitted to leave his house for about an hour a day to help his mother in her garden, which is on the property but outside the limits of Defendant's electronic monitoring. The Court GRANTED this request. For docketing purposes, the United States' Motion to resolve the suppression issue without a hearing is

DENIED.

## **RECOMMENDATION**

For the reasons herein stated, it is **RECOMMENDED** that Defendant's Amended Motion To Suppress [Docket Entry 55] be **DENIED.**

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 4th day of August, 2009.

*John S. Kaull*
          JOHN S. KAULL
          UNITED STATES MAGISTRATE JUDGE